[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
This case comes to this court as a presentment to the court that Stephen Noel Schaffer of Norwalk, Connecticut, has been guilty of misconduct not occurring in the presence of the court, involving his character, integrity and professional standing. By stipulation dated March 1, 1996, the parties bring to the court ten paragraphs of stipulated facts (attached hereto as Exhibit 1). The court finds these facts to be true.
It is clear to this court after listening to the evidence that the errors were attributable to inattention and negligence on Attorney Schaffer's part. The court finds that this was not an issue of his honesty. The court is satisfied that the bookkeeper who worked for him had substantial personal problems and that the problems referred to in paragraphs four and five were or the stipulated facts created through his inattention and negligence and her conduct.
It is also found in February of 1994 Mr. Schaffer wrote two checks to himself from his client's fund account, one dated February 26, 1994, in the sum of $350.00 and one dated February 28, 1994, in the amount of $700.00. At the time these were written Mr. Schaffer did not have funds in his account to cover these amounts. He was promised by his sister that she would wire the funds into his account by February 28th. Mr. Schaffer's sister did not wire him those funds. He admitted he did a very foolish thing and should have waited until the money was in the account.
The court finds that no one lost funds as the result of Mr. Schaffer's actions.
Exhibit B is a letter from Diane Cady explaining some of his personal conditions all set forth in Exhibit B. Other exhibits include letters of recommendation from George Gibson (Exhibit C), Betty Zumbro (Exhibit D), David Feliu (Exhibit E), Elizabeth Sharpe (Exhibit F), Robert VanBeever (Exhibit G), and Tracey CT Page 4770 Docimo (Exhibit H). Letters from Sharon Oberst (Exhibit 1), Ralph Fusco (Exhibit J), Attorney Gary Oberst (Exhibit K) and Attorney John Imhoff (Exhibit L) were also admitted as exhibits.
Exhibit M is a letter under oath from Stephen Schaffer's sister who confirms the testimony concerning her commitment to lend him the money and then concluding that she was not able to do it.
The court finds that the respondent has violated Rule 1.15 of the Rules of Professional Conduct and Section 27A of the Connecticut Practice Book by failing to properly maintain client's funds in his trust account and by converting funds to his own use by withdrawing upon his client's funds upon his expectation that funds would be forthcoming from his sister.
Wherefore, the court suspends Stephen Noel Schaffer from the practice of law for three months commencing July 1, 1996, ending on October 1, 1996, pursuant to Practice Book Section 31(a).
Stipulation of Facts
The undersigned parties hereby stipulate to the following facts:
1. Stephen Noel Schaffer, (hereinafter, "Respondent"), Juris No. 371848, was admitted as a member of the Bar of the State of Connecticut on or about August 14, 1962.
2. On or about January 19, 1994, the Respondent was reprimanded by the Statewide Grievance Committee in the matter ofDomino v. Schaffer, Grievance Complaint #93-0089, for entering into a business transaction with a former client without complying with Rule 1.8 of the Rules of Professional Conduct.
3. The Respondent was a partner with one C. Wesley Martin (hereinafter, "Martin") in a law firm known as Schaffer and Martin, P.C., from in or around June, 1990, until in or around April of 1994.
4. Several months after the formation of their partnership, Martin discovered through the firm's accountant and bookkeeper that the firm's clients' trust account, consisting primarily of accounts from the Respondent's former firm, Stephen N. Schaffer, P.C., had a deficit. Based upon the evidence presented and facts CT Page 4771 found at a hearing before a reviewing committee of the Statewide Grievance Committee on October 5, 1994, said deficit was approximately thirty thousand dollars ($30,000), which deficit was replaced using an incoming fee and additional funds from the Respondent.
5. In or around December of 1993, Martin discovered that an estate being probated by the Respondent, the Veronica Arena estate, had a deficit of approximately ten thousand dollars ($10,000).
6. The deficit in the Veronica Arena estate was replenished by Martin by the placement of five thousand dollars ($5,000) from the firm's general account into the firm's clients' trust account to cover the shortfall in the estate.
7. The additional five thousand dollar ($5,000) deficit from the estate was to be replaced by the Respondent.
8. In February of 1994, the Respondent wrote two checks to himself from his clients' fund account, one dated February 26, 1994, in the amount of three hundred and fifty dollars ($350.00) and one dated February 28, 1994, in the amount of seven hundred dollars ($700.00).
9. Said withdrawals occurred after the Respondent arranged a transaction with his sister whereby his sister would loan him one thousand one hundred dollars ($1,100), and wire the funds into his trust account by February 28, 1994.
10. The Respondent's sister subsequently advised him that she could not loan him the aforementioned funds.
Karazin, J.